MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:      2020 ME 124
Docket:        And-20-92
Argued:        September 18, 2020
Decided:       October 27, 2020

Panel:         MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

PAT DOE[1]

v.

DEBORA J. BATIE

GORMAN, J.

[¶1]  Debora J. Batie appeals from a judgment of the District Court (Lewiston, *Lawrence, J.*) granting Pat Doe a protection from abuse order against her on behalf of Doe's two minor children.  Batie argues that the court erred as a matter of fact and law by finding that she committed abuse within the meaning of 19-A M.R.S. § 4002 (2020).  We agree with Batie and vacate the judgment.

I.  BACKGROUND

[¶2]  On January 17, 2020, Doe filed a complaint for protection from abuse in the District Court on behalf of his two minor children against Batie, the

---

[1]  In accordance with the Violence Against Women Act, 18 U.S.C.S. § 2265(d)(3) (LEXIS through Pub. L. No. 116-169), we employ the pseudonym "Pat Doe" for the plaintiff in this matter.

2

children's maternal grandmother. Doe alleged that he and the children's mother, Batie's daughter, had recently separated; the mother died on December 15, 2019; and Batie had taken the children to Arizona. Doe stated that he sought a protection order "so [he could] regain [his] children from Arizona" and return them to Maine. The court (*Martin, J.*) granted Doe a temporary order that same day. *See* 19-A M.R.S. § 4006(2) (2020).

[¶3] With that temporary order in hand, Doe traveled to Arizona and, with the assistance of an Arizona court, retrieved his children and returned with them to Maine. On February 13, 2020, the court (*Lawrence, J.*) conducted an evidentiary hearing on the protection from abuse complaint, at which both Doe and Batie appeared and testified. During the hearing, Batie defended against the complaint on the ground that she believed that she had the authority to take the children to Arizona based on (1) her daughter's consent; (2) a power of attorney that the mother executed before her death, purporting to delegate to Batie all of the mother's authority over and responsibilities for the children; (3) the mother's will, purporting to name Batie as the children's guardian after the mother's death; and (4) the advice of an attorney.

[¶4] The court found, based on competent record evidence, that Batie took the children from Maine while her daughter—the children's mother—was

still alive and while the mother had a protection order against Doe. The court further found that the protection order gave the mother "rights with respect to the minor children that varied [from] Maine law" but that, upon the mother's death, "there was no further court order that in any way modified the status quo under Maine law, which is that parents have equal rights to the children." The court concluded that, with the mother's death, any rights Batie might have had to make decisions about the children ended. The court also concluded that Batie knowingly restricted the children's movement without the consent of Doe—then the only living parent—or other lawful authority and that those actions constituted abuse pursuant to 19-A M.R.S. § 4002(1)(D). Based on those findings and conclusions, the court issued a protection order prohibiting Batie from having any contact with the children.[2] *See* 19-A M.R.S. § 4007 (2020). Batie appeals.

## II. DISCUSSION

[¶5] Batie contends that the court erred—as a matter of fact and law—by determining that her actions in taking the children to Arizona and keeping

---

[2] The court also awarded Doe temporary parental rights and responsibilities for the children. As Batie does not appear to dispute, upon the mother's death, all parental rights to the children automatically devolved upon Doe, the only living parent whose parental rights had not been terminated. *See* 19-A M.R.S. § 1502 (2020); *Croxford v. Roberts*, 509 A.2d 662, 663 (Me. 1986).

them there after the mother's death constituted abuse within the meaning of the protection from abuse statute. We review the court's interpretation of the protection from abuse statute de novo as a matter of law, and we review the court's factual findings for clear error. *Dyer v. Dyer*, 2010 ME 105, ¶ 13, 5 A.3d 1049; *L'Heureux v. Michaud*, 2007 ME 149, ¶¶ 5, 7, 938 A.2d 801.

[¶6] A court may issue a protection from abuse order upon finding, by a preponderance of the evidence, that the defendant committed abuse. 19-A M.R.S. §§ 4006(1), 4007(1) (2020); *Clark v. McLane*, 2014 ME 18, ¶ 4, 86 A.3d 655. Among the definitions of "abuse" found in the protection from abuse statute is the following:

> **1. Abuse.** "Abuse" means the occurrence of the following acts between family or household members or dating partners or by a family or household member or dating partner upon a minor child of a family or household member or dating partner:
>
> . . . .
>
> **D.** Knowingly[3] restricting substantially the movements of another person without that person's consent or other lawful authority by:

---

[3] Although "[k]nowingly" is not defined in the protection from abuse statute, for purposes of criminal activity, a person acts "[k]nowingly" with regard to the result of that person's conduct "when the person is aware that it is practically certain that the person's conduct will cause such a result" and acts "[k]nowingly" with regard to attendant circumstances "when the person is aware that such circumstances exist." 17-A M.R.S. § 35(2) (2020). Because violations of protection orders may be charged as Class C or D crimes, we use the definition in section 35 here. *See* 19-A M.R.S. § 4011(1), (4), (5) (2020).

**(1)** Removing that person from that person's residence, place of business or school;

**(2)** Moving that person a substantial distance from the vicinity where that person was found; or

**(3)** Confining that person for a substantial period either in the place where the restriction commences or in a place to which that person has been moved;

. . . .

19-A M.R.S. § 4002(1)(D). Batie challenges the court's conclusion that her removal of the children from Maine and restriction of their movement to Arizona fell within all three alternatives in section 4002(1)(D).

[¶7] We conclude that the court's determination that Batie committed abuse of the children according to section 4002(1) is not supported by the record on two grounds.

[¶8] First, a finding of abuse can only be made as to acts "between family or household members or dating partners or by a family or household member or dating partner upon a minor child of a family or household member or dating partner." 19-A M.R.S. § 4002(1); *see Clark*, 2014 ME 18, ¶ 4, 86 A.3d 655. "Family or household members" is defined as "spouses or domestic partners or former spouses or former domestic partners, individuals presently or formerly living together as spouses, parents of the same child, adult household members

6

related by consanguinity or affinity or minor children of a household member when the defendant is an adult household member." 19-A M.R.S. § 4002(4). Here, the court did not find either that the children and Batie were family or household members or that Doe and Batie were family or household members according to this definition, nor is there any evidence in the record to support such findings.[4] The absence of any such evidence precludes the entry of a protection from abuse order against Batie on Doe's complaint. 19-A M.R.S. §§ 4002(1), (4), 4007(1).

[¶9] Second, although the court's determination that Batie had neither consent nor lawful authority to keep the children after their mother's death is accurate, its determination that Batie "[k]nowingly" restricted the movements

---

[4] Although Batie may have been among the class of persons authorized to *bring* a protection from abuse complaint on behalf of the children pursuant to 19-A M.R.S. § 4005(1) (2020), which states that "[w]hen a minor child in the care or custody of a family or household member or a dating partner has been abused by a family or household member, a dating partner or an individual related by consanguinity or affinity, a person responsible for the child, as defined in Title 22, section 4002, subsection 9, or a representative of the department may seek relief by filing a petition alleging that abuse," Batie was instead the party against whom a protection order was sought. Such protection orders may only be obtained against "[f]amily or household members." 19-A M.R.S. §§ 4002(1), (4), 4005(1) (2020).

In addition, no argument was advanced that, and we do not consider whether, the power of attorney rendered Batie and the children "[f]amily or household members" for purposes of the protection from abuse statute. 19-A M.R.S. § 4002(4). Doe's request for a temporary order accurately identified Batie as his mother-in-law and the children's grandmother, a description that—without more—would not qualify Batie and the children as "[f]amily or household members" according to section 4002(4). On that basis alone, Doe's request for a protection order against Batie should have been denied.

of the children without consent or other lawful authority is not supported by any competent evidence in the record. 19-A M.R.S. § 4002(1)(D); *see Dyer*, 2010 ME 105, ¶ 13, 5 A.3d 1049. The only evidence in the record is that Batie removed the children from Maine and kept them in Arizona specifically at the mother's request and that Batie believed that the mother had the authority to make decisions about the children at the time she made the request. *See* 19-A M.R.S. § 4007(1)(G). Batie's understanding of her authority to take the children to Arizona and keep them there was based on the mother's consent and a power of attorney memorializing that consent, which the mother executed before her death, s*ee* 18-C M.R.S. § 5-127(1) (2020); the mother's will "appoint[ing]" her as the children's guardian; and the advice of an attorney.

[¶10] Whether the mother actually had the power to authorize Batie to take or keep the children pursuant to any of these means is of no moment; the point is that there is no evidence in the record that could support a finding that Batie took the children to Arizona or kept them there with knowledge that she *lacked* the authority to do so, and Doe does not suggest otherwise. Indeed, it is undisputed that Batie did not learn that she lacked authority over the children until Doe arrived in Arizona to enforce the temporary protection order and retrieve the children. On such a record, we conclude that there was insufficient

evidence to support the court's finding that Batie knowingly restricted the children's movement without consent or lawful authority to do so.[5] *See* 19-A M.R.S. § 4002(1)(D).

The entry is:

Judgment vacated.

---

Scott J. Lynch, Esq. (orally), Lynch & Van Dyke, P.A., Lewiston, for appellant Debora J. Batie

Jon P. Plourde, Esq. (orally), and Neil S. Shankman, Esq., Shankman & Associates Legal Center, Lewiston, for appellee Pat Doe

Lewiston District Court docket number PA-2020-31
FOR CLERK REFERENCE ONLY

---

[5] Because we agree with Batie that the court's finding of abuse cannot stand, we do not address Batie's alternative arguments regarding the court's exclusion of evidence or its failure to apply the best interest of the child standard. We also note that the vacating of the protection from abuse order does not create in Batie any rights concerning the children. Without a court order pursuant to the Maine Parentage Act, 19-A M.R.S. §§ 1831-1939 (2020), or the Grandparents and Great-grandparents Visitation Act, 19-A M.R.S. §§ 1801-1806 (2020), she has no such rights.